THE STATE v. BARHAM, *Appellant.*

1  **Practice, Criminal** : IMPROPER REMARKS OF COUNSEL: CONTINU-ANCE.  Where counsel for the State has procured the refusal of defendant's application for a continuance, in a criminal case, on account of the absence of material witnesses, by admitting that the statements contained in the affidavit in support of the same should be read as the testimony of such absent witnesses, his assertion before the jury in his closing argument that it was not their evidence, that they had never seen the statements, and would not have sworn to them if they had been present, constitutes such a departure from legitimate argument and fair dealing, as to justify a reversal of the judgment.

2.  ——— : EVIDENCE.  To rebut the presumption of guilt arising from flight, a defendant in a criminal case has the right to show that his life was threatened by the relatives of the deceased, and in such case it is error to refuse to allow him to show the desperate and dangerous character of the persons making the threats.

3.  ——— : ——— : ACT OR DECLARATION OF CO-DEFENDANT.  No act or declaration of one co-defendant, after the common enterprise is ended, can be given in evidence against his co-conspirator being separately tried.

4.  ——— : DUTY OF COURT TO INSTRUCT JURY.  It is the duty of the court to instruct the jury as to all the grades of homicide to which the facts in evidence will apply.

*Appeal from Dunklin Circuit Court.*—HON. R. P. OWEN, Judge.

REVERSED.

*S. M. Chapman* for appellant.

(1)  The testimony of the witness Crawford that Nash left the country as soon as the shooting was over, and that he did not see him about after that, was improper and

wrong. No act or declaration of one co-defendant, after·
the common enterprise is ended, can be given in evidence
against his alleged co-conspirators. Wharton's Crim. Ev.,.
§ 699; *People v. Stanley*, 47 Cal. 112; *State v. Duncan*, 64·
Mo. 262. (2) The defense should have been permitted to
prove by the witness Crawford and others the desperate·
and dangerous character of the persons by whom defendant
had been threatened, after the homicide. (3) The court
should have instructed the jury upon the lower grades of·
homicide, especially murder in the second degree, and for·
this purpose all the testimony, including defendant's, should
have been considered. *State v. Banks*, 73 Mo. 592; *Craw-
ford v. State*, 12 Ga. 142; *State v. Bryant*, 55 Mo. 79. This·
should have been done whether asked by defendant or not.
*State v. Mathews*, 20 Mo. 57; *State v. Jones*, 61 Mo. 236;.
*State v. Banks*, 73 Mo. 592; 2 Bishop Crim. Proc., (3 Ed.)·
§ 638a; *State v. Branstetter*, 65 Mo. 155. (4) It was a vio-
lation of all legal fairness and good faith upon the part of·
the prosecution, after having admitted that the persons
named in the application to continue, would, if present,.
testify as therein alleged, and that the same should upon
the trial, be " read and admitted as and for their evidence,"
to tell the jury that it was not the testimony of sworn wit-
nesses, but a statement "artfully prepared by counsel for·
defendant; that it was all a tissue of lies; that it contained
nothing but lies, except a few immaterial things; that the·
persons named had never seen that statement, and would.
not have so sworn if they had been present." *State v. Un-·
derwood*, 75 Mo. 234; *State v. Roark*, 23 Kas. 151; *State v.·
Hickman*, 75 Mo. 421

*D. H. McIntyre*, Attorney General, for the State.

Counsel for the State, in his closing argument, had the·
right to indulge in severe invective against defendant, and
to comment upon the evidence, including the affidavit for
continuance, which was evidence like the rest. And it was.

not error for counsel to draw inferences in his argument unfavorable to defendant, because of his failure to testify fully upon the whole case. *State v. Emory*, 79 Mo. 461. Smith was indicted as principal in the first degree, and the defendant as principal in the second degree. But for all the purposes of the trial, they may be regarded as being jointly indicted as principals in the first degree, for the statute has abolished all distinction between the two degrees. R. S. 1879, § 1649; *State v. Ross*, 29 Mo. 32; *State v. Davis*, 29 Mo. 391; *State v. Talbott*, 73 Mo. 347; 1 Bishop Crim. Law, (7 Ed.) § 648, and authorities cited. It was competent to prove what part each performed in the act of killing, and that too without first establishing a conspiracy by them to kill the deceased. It was not necessary to prove a conspiracy at all. It was sufficient to show that they united in the act of killing, and this could be proved by their acts at the time and the weapons they used. *State v. Underwood*, 57 Mo. 40. The agreement to the commission of an offense may be inferred from acts as well as declarations. *Taylor v. State*, 9 Tex. App. 100. Even if it were necessary that there should be proof of an unlawful combination to kill the deceased, it is not necessary that it should be direct and positive. Defendant's connection with the transaction being shown, the jury may determine from the circumstances whether there was a combination. 4 Criminal Law Magazine, p. 102. Where the acts of the principal in the first degree are connected with defendant, on trial as principal in the second degree, they may be made to appear in the ordinary way. 2 Bishop Crim. Proc. (3 Ed.) § 14. In this case the acts of all the parties were so closely connected that they could not be separated, and what was done by Smith and Nash was admissible as *res gestae*. The instructions given covered the whole case, and the evidence did not warrant the giving of instructions upon any grade of homicide besides murder in the first degree.

NORTON, J.—The defendant and Willie Nash were

jointly indicted as accessories with Daniel A. Smith as principal at the adjourned February term, 1881, of the circuit court of Dunklin county for murder in the first degree in killing one John C. Crawford. Defendant, Barham, was separately tried at the November term, 1883, of said court, and was convicted of murder in the first degree. Defendant having made an unsuccessful motion for a new trial, brings his case to this court by appeal, and assigns, among other things, the action of the court in admitting improper and rejecting proper evidence, in not instructing the jury as to some grade of homicide less than murder in the first degree, and in refusing to grant a new trial on account of improper conduct on the part of counsel for the state in the closing argument to the jury. The last of these objections will be noticed first.

When the cause was called for trial defendant made an application for continuance on the ground of the absence of certain witnesses named therein, who had been duly subpœnaed, and set out in the application the facts he expected to prove by said witnesses. Upon an admission by the prosecuting attorney that the persons named in the application would, if present, testify as was alleged in the application, and that the statement therein set forth should be read on the trial as and for their evidence, the continuance was refused as provided in section 1886, Revised Statutes, which declares that if upon application to continue, the adverse party " will consent that on the trial the facts set out in the application, or affidavit as the facts which the party asking the continuance expects to prove by the absent witness shall be taken as, and for, the testimony of such witness, the trial shall not be postponed for that cause; but the facts thus set out shall be read on the trial and shall be taken and received by the court or jury trying the cause as the testimony of the absent witness." The trial then proceeded, and the statement contained in the affidavit was read in evidence, and the counsel for the State, in the closing argument before the jury in commenting on the state-

ment, was allowed to state and represent to the jury that the statement "was not the testimony of sworn witnesses," but a statement " artfully prepared by counsel for defendant; that it was all a tissue of lies; that it contained nothing but lies except a few immaterial things; that the persons named had never seen it, and would not have so sworn if they had been present," but "the State had proven her case by living witnesses who had flesh and bone and blood, and had proven this statement to be lies and nothing but lies."

While we are disinclined to hamper prosecuting attorneys in the line of argument to be pursued by them in prosecuting persons charged with crime, and while we will not reverse a judgment for every unguarded expression made in the heat of discussion, provoked sometimes by the course of opposing cousel, and sometimes by the enormity of the crime developed by the evidence, yet in a case like the present, where the remarks made are " violative of all legal good faith and fairness," we feel it to be our duty to interfere. Had the prosecuting attorney treated the statement as legitimate evidence in the cause, and undertaken simply to demonstrate that it conflicted with the evidence on the part of the State, and that the evidence of the State's witnesses disproved the statement and showed it to be utterly false, there would have been no ground for disturbing the verdict on that account; but having procured the refusal of defendant's application for a continuance by admitting that the statement contained in the affidavit should be read as the evidence of the absent witnesses, thereby preventing defendant from procuring the personal attendance of such witnesses, and forcing a trial, his denial before the jury in his closing speech that it was their evidence that they had never seen the statement and would not have sworn to it if they had been present, was such a departure from legitimate argument and fair dealing as to justify a reversal of the judgment, especially so in view of what was said by this court, speaking through Judge

SHERWOOD, in the case of the *State v. Underwood*, 75 Mo. 234, in which it was shown that the statute expressly says that the facts thus set out shall be read on trial, and shall be received by the court trying the cause as the testimony of the absent witnesses. " There can be no other rational construction placed on this language, but that it was intended to place the statement of facts set forth in the application for a continuance, on precisely the same footing to all intents and purposes as though the absent witnesses had been personally present and testified. And it was because we took this view of the matter on former occasions that we upheld the validity of the statute."

The case of the *State v. Jennings*, 81 Mo. 185, is to the same effect.

While under the principle announced in the case of *State v. Emory*, 79 Mo. 461, an indulgence by a prosecuting attorney in just and even fierce invective against a criminal, and in argument to show that the evidence on the part of a defendant was false, would afford no reason for reversing a judgment. Yet, in a case like the present, when the defendant was prevented from having his witnesses personally present to testify in court, by the admission of counsel that the facts stated in an application for continuance should be received as their evidence, and a denial made in the trial thus forced upon the defendant, before the jury in his closing speech, without rebuke from the court, that such was their evidence, a different case is presented. In the case of *State v. Roark*, 23 Kas. 147, quoted in the case of *State v. Hickman*, 75 Mo. 420, when the prosecutor indulged in a line of argument similar to that pursued in this case it was held that it could not be sustained.

During the progress of the trial the State offered evidence tending to show that a few days after the homicide defendant fled. To rebut the presumption arising from flight defendant offered evidence to show that the brothers and relatives of the deceased had threatened to kill him, but the court refused to allow him to offer evidence as to

the dangerous and desperate character of the persons making the threats, and in doing this we think committed error.

The court also committed error in allowing the witness, Crawford, to state that Nash, who was jointly indicted with defendant, " left the country as soon as the shooting was over and that he did not see him after that." No act or declaration of one co-defendant, after the common enterprise is ended, can be given in evidence against his co-conspirator being separately tried. *State v. Duncan*, 64 Mo. 262, 266; *People v. Stanley*, 47 Cal. 114.

As the judgment will be reversed for the errors pointed out, it may be well to observe that there was evidence tending to show that the shots fired by the accused were accidental; and if such a state of facts should appear in a retrial of the cause under the rule laid down in the cases of *State v. Matthews*, 20 Mo. 57, and *State v. Banks*, 73 Mo. 592, it would be the duty of the court to instruct as to all the grades of homicide to which the facts in evidence would apply.

Judgment reversed and cause remanded. All concur.