Ellis R. Smith, Respondent, v. Western Union Telegraph Company, Appellant.

Kansas City Court of Appeals, January 8, 1894.

Trial Practice: attorney's closing argument. In an action for delay in sending a telegram, the sole question submitted to the jury was whether the preoccupied condition of the wires was the cause of the delay, the plaintiff's counsel in his closing argument told the jury he was an operator and had worked on the line in question and it was all nonsense to say that any office could not be reached in twenty minutes. Defendant's counsel objected and called the court's attention to the matter and excepted because the court made no ruling but permitted the plaintiff's counsel to proceed with further matter of the same kind. At the close of the argument defendant's counsel further objected and asked that the jury be discharged and the cause continued. The court thereupon told the jury not to consider statements of counsel concerning his personal knowledge as an operator, as he was not a witness in the cause; and defendant again excepted. *Held,* the conduct of the plaintiff's counsel was prejudicial to the defendant and the direction of the court to the jury was insufficient to cure the same and the judgment should be reversed and a new trial granted.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

*Charles E. Yeater* for appellant.

The action of plaintiff's counsel in the closing argument, in stating to the jury that he knew from his previous personal knowledge and experience as a telegraph operator, that the defendant's employees had not testified to the truth in their statement of their inability to call another office, and in persisting in similar remarks, was under all the circumstances of the case, such improper conduct as rendered it error to submit the case to the jury. *Fathman v. Tumilty,* 34 Mo. App. 241; *Gibson v. Zeibig,* 24 Mo. App. 69 and cases cited in opinion on rehearing; *Nichols & Shepard v. Metzger,* 43 Mo. App. 618.

*Geo. F. Longan* for respondent.

GILL, J.—This is an action to recover the penalty provided for in section 2725, Revised Statutes, 1889, for the alleged failure to promptly transmit a telegraphic dispatch left with the defendant's agent at Concordia, Missouri, at about six o'clock P. M., January 15, 1893. The message was directed to Elliott, at Marshall, Missouri, and, on account of some delay, was not received at Marshall until about nine o'clock on the morning of January 16, 1893. By reason of the absence of a direct wire from Concordia to Marshall, it seems to have been necessary to pass the message through the telegraph office at Lexington, Missouri. The defense relied on was, that the lines were so taxed with other telegraphic work that the operators were unable,

during the ordinary business hours, to get the dispatch through as promptly as desired. This was indeed the sole issue in the case, and the court, without objection, presented the same by these instructions:

"1. The court instructs the jury that, if they believe from the evidence, that the defendant's agents were unable to send the message in question to Marshal before the close of the office hours at that place on the evening of January 15, 1890, because of the fact that the wires were busy or engaged, then their finding must be for the defendant.

"2. The court instructs the jury that, if they believe that it was impossible to send the message on the evening of the day it was filed, by reason of the fact that the wires were busy, or engaged, their finding must be for the defendant, although its agents may have failed to promptly send the message from Lexington to Marshall on the day following:

"3. The court instructs the jury that, if they believe from the evidence, that the defendant's agents attempted in good faith and impartially to promptly send the plaintiff's message, then, notwithstanding any failure, the finding must be for the defendant."

After an oral argument, by Mr. Longan, attorney for plaintiff, and Mr. Yeater, for defendant, the jury gave a verdict for the plaintiff, and from a judgment thereon defendant has appealed.

The principal matter complained of in this appeal is the alleged improper conduct of plaintiff's counsel in the discussion of the case before the jury. The bill of exceptions shows that Mr. Longan in making the closing argument to the jury, made use of the following words, and others of like import, as shown in the bill of exceptions which we copy, to-wit:

"'Gentlemen, I am a telegraph operator myself, and it is all nonsense to say that any office could not

be reached at any time in twenty minutes after it is called.' And upon making said remarks in the course of the argument, defendant's counsel momentarily interrupted plaintiff's counsel, the said George F. Longan, and objected to such remarks, and to other remarks of a similar nature which had preceded them. The court at that time made no ruling, to which action of the court the defendant by its counsel then and there excepted at the time.

"Thereafter the said counsel for plaintiff, George F. Longan, resumed his argument, and very shortly thereafter he made use of the following language:  'I have worked on this very Lexington branch line myself, not at Concordia, but at Hughesville, and I know that that line is never kept busy, and that it has two wires which are more than sufficient to attend to business on that line.  I know that any office on that line can be called without any delay, and it is all nonsense to tell me that the operator could not get that message off without delay.' And the said plaintiff's counsel repeated said remarks, or words to that effect in his argument to the jury, and while plaintiff's counsel, said George F. Longan, was continuing his argument, and immediately after the aforesaid objections the defendant's counsel, Mr. Charles E. Yeater, at the time wrote at once the following words upon a sheet of legal cap paper, to-wit: 'The defendant's counsel asks the court to reprimand Mr. Longan, counsel for the plaintiff, for stating to the jury in argument: "Gentlemen, I am a telegraph operator myself and it is all nonsense to say that any office could not be raised at any time in twenty minutes after it is called," and other similar statements, for the reason that his statement, as an expert, was not under oath.'

"And immediately after Mr. Longan concluded his argument defendant's counsel handed the said writing,

setting forth the foregoing words, to the court, and in addition renewed his objections orally.

"And, thereupon, the court used about the following words to the jury: 'You will not consider any statements made by Mr. Longan in his argument concerning his personal knowledge as an operator, for the reason that he was not a witness in the cause.' To which action of the court in not more severely reprimanding Mr. Longan, or in not then and there discharging the jury and continuing the cause, the defendant then and there excepted at the time. And the said writing handed to the court last aforesaid set forth was then an there duly filed in the cause by defendant's counsel."

That plaintiff's counsel in this case grossly transcended the line of legitimate argument cannot be questioned. Notwithstanding frequent criticisms—many of which I think unjust—the settlement of disputes by means of trials by jury may be regarded as superior to all other experiments, hedged about and guarded as such trials are under our laws and rules of practice. And whether disputed facts are to be settled by twelve men or one man, there is nothing at the trial so conducive to a just result, or of such potent aid to the human understanding, as the well directed argument of the lawyer, who brings into the court the results of an industrious, thoughtful consideration of the case in all its bearings. But it is not the province of the lawyer in presenting by argument his client's cause to manufacture evidence. The testimony must come from the sworn witnesses.

It was herein that plaintiff's honored and reputable counsel was at serious fault when he indulged in the line of argument above quoted from; and it was the more serious and prejudicial to the opposite side *because* of the well known standing of the lawyer that

uttered the objectionable matter. The probable prejudicial effect of Mr. Longan's voluntary and unsworn statements is readily seen when we consider what was in fact the telling point in the case and the state of the testimony bearing thereon. The sole question of fact then being tried by the jury, was, whether or not the delay in transmitting plaintiff's dispatch was unavoidable under the circumstances—whether or not the telegraph wires were so preoccupied that the operators were unable to forward the message in due season. The testimony adduced by the telegraph company tended very strongly to sustain this defense; indeed we may say that up to the argument there was but little evidence the other way. There were, however, some "physical facts" and circumstances tending to disprove the defense, and these the plaintiff was entitled to, and his counsel was justified in using these to the best possible advantage. He had the right, and it was his duty, to call attention to these circumstances, to elaborate thereon, to discuss the testimony given by defendant's witnesses and urge its improbability or falsity. But the attorney had no right, in the absence of direct proof on his side to supply the deficiency by his own unsworn statements. He exceeded the most liberal limit allowed to advocacy, when he said to the jury: "Gentlemen I am a telegraph operator myself, and it is all nonsense to say that any office could not be reached at any time in twenty minutes after it is called." And the counsel emphasized and aggravated the offense, when (though called to order by defendant's attorney) he in effect repeated such language, telling the jury, later on, "I have worked on this very Lexington branch line myself, not at Concordia, but at Hughesville, and I *know* that that line is never kept busy, and that it has two wires, which are more than sufficient to attend to business on that line. I *know*

that any office on that line can be called without any delay, and it is all nonsense to tell me that the operator could not get that message off without delay." These, and like statements, the bill of exceptions recites, were made and *repeated* during the closing argument of the zealous counsel for the plaintiff—were made, too, at a time when defendant's counsel had no opportunity to reply, and in face of an objection interposed by him. The trial judge, though appealed to at the first appearence of the offense, said nothing, and permitted the attorney to proceed without rebuke and again to repeat the same unfair argument. However at the close of the speech the judge did say to the jury: "You will not consider any statements made by Mr. Longan in his argument concerning his personal knowledge as an operator, for the reason that he was not a witness in the cause." Defendant's counsel suggested that the rebuke or reprimand was not sufficient, and insisted that the jury should have been discharged and the the cause continued.

Now, the further question is, whether or not the above remarks by the trial judge after the close of the argument cured the prejudice thus wrongly cast against the defense. Ordinarily, we think an instruction to this effect might be sufficient; but in so aggravated a case as this we hold that this mild statement from the court was not adequate or timely. As to what is proper, in cases of this nature, depends much upon the circumstances. Here was the trial of a question where there appeared a decided preponderance of direct testimony on defendant's side of the issue. To overcome this, the plaintiff's overzealous counsel threw into the scales the assertion of his own experience, and repeated and elaborated the same before the jury. Doubtless this was done inadvertently and during the heat of earnest argument—at least from our own knowledge of the

character and standing of the offending counsel we are free to concede that no unfair advantage or unprofessional conduct was *intended*. But this must not weigh "one feather's weight" with us. If, because of this indiscreet and improper argument, the conclusion is irresistible that the cause of the defendant was prejudiced, it is then our duty, in promoting the fair and impartial administration of justice, to order the judgment set aside and award the parties a new trial. We recognize that we are here dealing with a matter of practice that rests largely in the discretion of the lower court; but even in cases of that nature it is our duty to interfere where that discretion has been manifestly abused. We regard this as an instance of that nature.

Where illegitimate argument is indulged in before a jury it is made the duty of opposing counsel promptly to object at the time of its utterance, so that the court may immediately correct the error by rebuking the offending lawyer and admonishing the jury not to be influenced by the objectionable matter; and the reports of this and the supreme court are full of cases where the offended and prejudiced party was not heard to complain because of a failure to thus promptly object at the time. Where now, as was the case here, the opposing counsel does promptly make his objections to the unfair and improper argument—and that, too, in its very incipiency—was it not as well the duty of the trial judge as promptly to stop and reprimand the offending advocate and caution the jury not to be influenced by such prejudicial statements? In allowing Mr. Longan to proceed over defendant's objection, and to restate and elaborate his experience in telegraphy, the court tacitly indorsed the propriety of such argument; which thereby, we have a right to assume, became so fixed that even the mild caution given by the court at the

conclusion of the argument would hardly eradicate it from the minds of the jurors. In our opinion then the error of the trial judge in permitting plaintiff's counsel, against the objection of the defendant, to indulge in said illegitimate argument, was not cured by the subsequent direction to disregard said statements. The remarks of Judge LEWIS, of the St. Louis court of appeals, in the decision of a case like this in principle we think, are applicable here. In that case the fault of the attorney was in discussing, against the objections of the other side, certain proffered evidence before the jury which had been excluded by the trial court. The court allowed the argument to proceed, but subsequently instructed the jury to disregard it. The learned judge who wrote the opinion said: "Nothing can be clearer than that, in this case, the plaintiff was entitled to be protected against any determination of his rights founded on the rejected evidence. The method adopted by the court was anything but a proper exercise of its authority to the end proposed. It is always dangerous to let in an evil, because of a possible remedy for it. Better to withhold the poison than to depend on the antidote. Instead of this mild attempt to avert the evil tendencies of the attorney's violation of propriety, the learned judge should have acted upon the rule declared on a former occasion; 'an advocate must not make himself a witness and state facts not in evidence to prejudice the jury. Such statements should be checked and a severe reprimand administered in the presence of the jury, to the attorney who is guilty of this violation of duty.'" *Marble v. Walters*, 19 Mo. App. 134; *Roeder v. Studt*, 12 Mo. App. 566. See, also, the following: *Gibson v. Zeibig*, 24 Mo. App. 65; *Brown v. Swineford*, 44 Wis. 282; *Rudolph v. Landwerlen*, 92 Ind. 34; *School Town of Rochester v. Shaw*, 100 Ind. 268; *Cleveland Paper Co. v. Banks*, 15 Neb.

20; *Wolffe v. Minnis*, 74 Ala. 386; *Scripps v. Reiley*, 35 Mich. 370; 1 Thompson on Trials, secs. 955, 958 960.

The judgement will be reversed and the cause remanded for a new trial. All concur.