JOHN MASSENGALE, Appellant, v. E. E. RICE, Respondent.

### Kansas City Court of Appeals, May 5, 1902.

1. **Trial Practice: MISCONDUCT OF COUNSEL: REMARKS OUT OF THE RECORD.** On a review of the record it is held that the remarks of defendant's counsel in assailing the plaintiff are unsupported by the evidence, and counsel should have been reproved by the court.

2. **Trial and Appellate Practice: CONDUCT OF DEFENDANT: OBJECTION AND EXCEPTION.** Although the conduct of the defendant in calling the jury's attention to the facts that the steer in controversy was in town and for them to go and look at it, was reprehensible, yet as no objection or exception was made and saved the appellate court can not review it.

3. **Trial Practice: EVIDENCE: SUGGESTION.** Suggestion as to evidence on a new trial.

Appeal from Chariton Circuit Court.—*Hon. Jno. P. Butler,* Judge.

REVERSED AND REMANDED.

*R. G. Mitchell* and *D. R. Hughes* for appellant.

(1) The court admitted illegal and incompetent testimony for defendant. (2) The court, after the ruling that it was an improper practice to examine the steer in question, permitted the defendant, without rebuke, to say to the jury "that the steer in question was in Salisbury, and for them to go and look at him." (3) The court refused to compel the defendant on the stand to answer the following legal and competent question: "Didn't Mr. Smith and Mr. Babbitt, or one or both, tell you in October, 1899, that this steer in question

was the steer of John Massengale when you were questioned as to whose it was ?" The court said, in presence of the jury, the question is incompetent. (4) A verdict obtained by comment on excluded testimony and by stating as evidence that which was not evidence, and by argument which has no evidence to support it, ought not to be permitted to stand. Thompson on Trials, sec. 958 and 969; Marble v. Walters, 19 Mo. App. 135; McDonald v. Cash, 45 Mo. App. 66; Smith v. Tel. Co., 55 Mo. App. 626; Ritter v. Bank, 87 Mo. 574; Haynes v. Town of Trenton, 108 Mo. 123; Gibson v. Zeibig, 24 Mo. App. 65; Bishop v. Hunt, 24 Mo. App. 373; Railroad v. Meyers, 63 Fed. Rep. 793; Hall v. United States, 150 U. S. 76; Tucker v. Hanniker, 41 N. H. 317.

*Bert D. Nortoni, F. C. Sasse* and *J. A. Collet* for respondent.

(1) It was entirely proper for the court to compel Chrisman to say whether he had had difficulties with Rice, and it was also proper for him to answer whether Sharp and Rice were friendly or unfriendly. (2) The complaint made by appellant as to misconduct of Rice while on the witness stand in saying to the jury "that the steer in question was in Salisbury, and for them to go and look at him," comes too late after verdict. The affidavit of Hughes shows that the court's attention was taken up with other matters at the time, and it was the duty of counsel to call the court's attention to said alleged misconduct, and failing to do so, they waived their right to complain after the verdict. State v. Weber, 156 Mo. 256; Vette v. Geist, 155 Mo. 27; Hall v. Jennings, 87 Mo. App. 627; State v. Robinson, 117 Mo. 666. (3) In view of the testimony as shown by appellant's abstract, the complaint that the court erred in refusing to compel Rice to answer the question, "Didn't Mr. Smith or Mr. Babbitt, one or both, tell you in October, 1899, that this steer in question was the steer

of John Massengale when you were questioned as to whose it was," seems more frivolous than serious.    (4)    All the cases cited in appellant's brief condemn the practice of counsel stating as facts, as of their own knowledge, matters of which there had been no testimony offered or received in the case.    The case at bar is entirely different.    Here, counsel was arguing from what had been produced in testimony, and drawing conclusions from appellant's statements made to the jury.    After appellant had stated that where he had been engaged in the cattle business, the law gave every man the right to have branded for himself all the unbranded cattle found with his cattle, counsel had the right to draw his own conclusions from that statement, and to state to the jury what those conclusions were, and though the conclusions may have been entirely erroneous, and for the sake of this argument, we may say, entirely unsupported by testimony, yet so long as such conclusions were stated as being based upon the evidence, and not as facts within the knowledge of counsel, independent of the evidence, no error was committed.    State v. Zumbunson, 86 Mo. 111; State v. Jones, 78 Mo. 286; State v. Owens, 78 Mo. 367; State v. Dickson, 78 Mo. 451; State v. Emory, 79 Mo. 463; State v. McNally, 87 Mo. 659; State v. Brooks, 92 Mo. 588; State v. Edie, 147 Mo. 535; State v. Floyd, 15 Mo. 349; Fendler v. Dewald, 14 Mo. App. 60; Pearson v. Railroad, 14 Mo. App. 580; Schields v. Waldron, 13 Mo. App. 597; Bank v. Wood, 124 Mo. 72; Madden v. Paroneri Realty Co., 75 Mo. App. 358.

SMITH, P. J.—This is an action of replevin which was begun before a justice of the peace to recover the possession of a steer.    The cause was removed into the circuit court where there was a trial to a jury resulting in judgment for defendant, and from which the plaintiff appealed.

It appears from the record before us that at the trial the

plaintiff testified in his own behalf, and on cross-examination the following questions were asked and answered:

"Q. Now, you are in the habit of branding your cattle out west? A. We branded all of them. Q. On the ranch? A. Branded all of them. Q. How long have you been in the cattle business? A. Oh, well I handled a few cattle out there for ten or fifteen years. Q. Ever handle any mavericks? A. None, only my own, as I know of. We had a law, all we rounded up where your stock ran and belonged to you, the people branded them for you, the round-up people branded them for you. Q. If you got anybody else's steer that was not branded, you ran him in? A. I don't know that I did."

The plaintiff's counsel objected to this last question which was by the court sustained. The defendant thereupon asked the plaintiff this further question: "Q. I will ask you, Mr. Massengale, if you have not told repeatedly since you came back to Missouri that you got your start rounding up unbranded cattle in the west and branding them for yourself?" To this question plaintiff's counsel objected and which objection was by the court sustained.

It further appears that during the argument of the case to the jury Mr. Collet, one of defendant's counsel, remarked that "Massengale, the plaintiff, obtained his start and made his money by rounding up unbranded cattle in the west, and stealing them and branding them as his own." As soon as this remark was made the plaintiff's counsel objected thereto for the reason that no evidence to that effect had been adduced; that thereupon the court directed the defendant's counsel to confine his remarks to the evidence, whereupon he replied, "I am stating facts," and then turned to the jury and further remarked, " you see them squirm when the truth begins to hurt, he [meaning plaintiff] is a cattle thief and is trying to follow the same law here as he did in Montana. He

is now trying to come down to Chariton county and steal some of our cattle." To these remarks the plaintiff objected as being outside of the record and had not been proved, but the court overruled the objection because it was of the opinion that the remarks of the defendant's counsel were justified by the evidence, to which ruling the plaintiff duly excepted.

I.   It is quite difficult to conceive of a more flagrant abuse of the license of speech by counsel than that of defendant's counsel in this case. His remarks were based upon a question which the court had ruled was improper and calling for evidence which was impertinent. There was no evidence whatever of the facts referred to by defendant's counsel, and yet the court, when appealed to by plaintiff's counsel, ruled that there was and permitted the defendant's counsel to proceed with his argument without reprimand or rebuke.

The evidence adduced to maintain both the affirmative and negative of the controverted and decisive issue of fact in the case, was quite evenly balanced, and it may be that the unproved facts referred to in the objected-to remarks of the counsel for defendant, coupled with that of the court in respect thereto when challenged by plaintiff's counsel, may have turned the scale in defendant's favor. The court, in effect, by its ruling, admitted the improper evidence which defendant's counsel had by his question sought to introduce, and permitted him to make it the ground for hurling against plaintiff and his business methods the bitterest and most damaging invectives. The effect of this inadvertence of the court we must think was highly prejudicial to plaintiff.

The remarks made by us in Ensor v. Smith, 57 Mo. App. 584, are equally applicable here, to the effect: "In the portions of the argument and remarks of counsel to the jury which have just been quoted, it is seen that statements and allusions to various facts, to prove which there was no evidence adduced, were made, which it seems to us, were calculated to do much harm. The admonition of the court to counsel to

keep within the record was not sufficient to repair the damage which probably resulted. When the mind of the jury is being swayed by the use of perverted and conjectured facts and the influence of zealous and impassioned advocacy, the conditions may require the application of a far more radical and drastic remedy than that administered by the court. If the warning of the court is disregarded it may, in its discretion, then suspend the argument and discharge the jury, or omitting to ·do that, it may later on set aside the verdict on its own motion. In the recent case of Smith v. Telegraph Co., 55 Mo. App. 626, where it appeared that counsel for the plaintiff in his argument before the jury persisted in making a statement of facts, which were not disclosed by any evidence, and in commenting thereon, it was held that such behavior was an abuse of the license of speech by counsel and a sufficient ground for reversing the judgment.

"In the management of a cause the largest and most liberal freedom is allowed counsel and the law protects him in it. 'The right of discussing the merits of the cause both as to the law and the facts is unabridged, the range of discussion wide. He may be heard in argument upon every question of law. In his addresses to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; to arraign the conduct of the parties; to impugn, excuse, justify or condemn motives so far as they are developed in evidence; assail the credibility of witnesses when it is impeached by direct evidence or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance on the stand, or by circumstances. His illustrations may be various as the resources of his genius; argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit or the wings of his imagination.' Mitchum v. State, 11 Ga. 613. But while this broad and comprehensive license is accorded counsel, it is neverthe--

less subject to the restrictions that they must 'keep within the record' as to the facts.    In condemning the practice of undertaking to get that in as proof which is merely conjecture it was said in Berry v. State, 10 Ga. 522, by the great judge who delivered the opinion in the case:    'Why then resort to such a subterfuge.    Does not history, ancient and modern; nature, art, science and philosophy; the moral, political, financial, commercial and legal worlds—all open to counsel rich and inexhaustible treasures for illustration?    Here under the fullest inspiration of excited genius they may give vent to their glowing conceptions in thoughts that breathe and words that burn.    Nay, more, giving reins to their imagination they may permit the spirit of their heated enthusiasm to swing and sweep beyond the flaming bounds of space and time, *extra flammantia moenia mundi*.    But let nothing tempt them to pervert the testimony, or surreptitiously array before the jury, facts which, whether true or not, have not been proved.' "

Ingenious counsel for defendant have in a very able brief urged upon our consideration a number of reasons, some of which are quite persuasive, why the judgment ought not to be disturbed, but after all we are unable to relieve our mind of a suspicion, still lingering there, that the verdict upon which it rests may have been influenced by the conduct of defendant's counsel.    We are further sustained in the conclusion just stated by the following authorities cited in plaintiff's brief:    Thompson on Trials, secs. 958 and 969; Marble v. Walters, 19 Mo. App. 135; McDonald v. Cash, 45 Mo. App. 66, 79; Smith v. W. U. Tel. Co., 55 Mo. App. 626; Ritter v. Bank, 87 Mo. 574; Haynes v. Town of Trenton, 108 Mo. 123, 133; Gibson v. Zeibig, 24 Mo. App. 65; Bishop v. Hunt, 24 Mo. App. 373, 377; Railroad v. Meyers, 63 Fed. Rep. 793; Hall v. United States, 150 U. S. 76; Tucker v. Hanniker, 41 N. H. 317.

II.    It appears that the defendant by his counsel, during

the progress of the trial, requested the court to put the jury in charge of the sheriff and that an exhibit of the steer in controversy be made to it to the end that it might examine for itself the marks and brand. This request was by the court refused. It further appears that after this ruling was made, and while the attention of the court was engaged in the consideration of some other matter, the defendant told the jury that the steer in question "was in Salisbury"—the place of trial—and for it "to go and look at it." While this conduct of the defendant was under the circumstances, highly improper, we can not find that the attention of the court was called thereto by the plaintiff in such a way as it could administer a suitable rebuke to defendant therefor. There was no ruling of the court in respect thereto, or exception saved so as to bring the matter before us for review.

III. The objections to the action of the court in admitting the evidence referred to in the plaintiff's first and third assignment of error, as far as we are able to discover, were well taken, and at the trial anew we think such action ought to be avoided.

The judgment will be reversed and cause remanded. All concur.